**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

ALEJANDRO RANGEL MENDOZA and
FRANCISCO JAVIER ESCAMILLA,
by and through their next friend
JAYCEE QUIJANO,

Petitioners,

v. CIVIL ACTION NO. 3:26-0662

DAVID VENTURELLA,
Acting Director, United States Immigration and Customs Enforcement,
MARKWAYNE MULLIN,
Secretary of Homeland Security;
TODD BLANCHE,
United States Attorney General;
KENNETH BARNETT,
Supervisory Detention and Deportation Officer,
United States Immigration and Customs Enforcement;
JOHN RIFE,
Field Office Director, Philadelphia Field Office,
United States Immigration and Customs Enforcement;
in their official capacities,

Respondents.

## MEMORANDUM OPINION AND ORDER

The Court granted the Petition and ordered Petitioner **Francisco Javier Escamilla** released on October 22, 2026. ECF No. 23. This Opinion sets forth the reasons for that decision.[1]

## I. BACKGROUND.

Petitioners were arrested on the morning of October 15, 2026, within the interior of the United States, in or around Huntington West Virginia, following a traffic stop. Pet. ¶ 16, ECF No.

[1] Petitioner **Alejandro Rangel Mendoza** was also ordered released on October 19, 2026. *See* ECF No. 10.

1. They were then transported to the ICE processing facility in Poca, West Virginia. ECF No. 8 at 5. At this facility, they signed voluntary departure agreements. *Id.* The Petition was initially entered around 11:25 A.M. on the same day. *See* Pet., ECF No. 1.

Petitioners allege that their detention violated (1) the Fifth Amendment's Due Process Clause and (2) 8 U.S.C. § 1226(a) and its implementing regulations. *See id.* ¶¶ 28-40. Specifically, Petitioners allege that "no immigration officer . . . has conducted an individualized custody determination assessing whether Petitioners' continued detention is necessary to address flight risk, danger to the community, or the availability of conditions of release." *Id.* ¶ 19.[2]

In response, Respondents "assert that they have comported with the requirements of § 1226(a)" and that "**Petitioner JAVIER ESCAMILLA** received a custody determination" as "noted on the Form I-286, *Notice of Custody Determination*." ECF No. 8 at 2. Respondents also counter Petitioners' allegations by "asserting that any challenge to the custody determination must be presented to an Immigration Judge." ECF No. 19 at 5.

In reply, Petitioners assert that "Petitioner Escamilla did not actually receive a meaningful individualized custody determination without a hearing, notwithstanding the submission of boilerplate Form I-286's by Respondents." ECF No. 11 at 3. They also "assert that immigration officials failed to meaningfully exercise discretion, failed to provide Petitioners with the minimum due process protections to which they were entitled, and, for all intents and purposes, subjected Petitioners to a continued policy of mandatory detention." ECF No. 22 at 2.

The Show Cause Hearing was initially scheduled for October 22, 2026. *See* ECF No. 5. Two similar matters with the same Respondents, the same Petitioners' Counsel, and identical legal issues were also scheduled for Hearing on the same day. *See Naranjo Sigueros v. Venturella*, No.

[2] The Court need not address Counts Three or Four of the Petition to grant relief. ECF No. 1.

3:26-cv-00663, ECF No. 5; *Centeno Zapata v. Venturella*, No. 3:26-cv-00667, ECF No. 5. Respondents waived an evidentiary hearing in all three cases below on October 22, 2026. *See Rangel Mendoza*, ECF No. 19 at 5; *Naranjo Sigueros*, ECF No. 21 at 5; and *Centeno Zapata*, ECF No. 20 at 5. The Court canceled the Show Cause Hearings and decided all three matters on the record before it, granting relief to five petitioners that same day. *See Rangel Mendoza*, ECF No. 23; *Naranjo Sigueros*, ECF No. 25; and *Centeno Zapata*, ECF No. 24.[3]

## II. LEGAL STANDARD.

A petitioner may be entitled to habeas corpus relief if a district court determines the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (citations omitted); 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving unlawful custody by a preponderance of the evidence. *Post v. Boles*, 332 F.2d 738, 740 (4th Cir. 1964). "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. DISCUSSION.

In its Order granting relief, this Court found that "Respondents have failed to meet their burden of demonstrating that Petitioners received an individualized custody determination consistent with 8 U.S.C. § 1226(a)." ECF No. 23. This Court finds that Respondents' failure to provide Petitioner Escamilla with an individualized custody determination violates both § 1226(a) and its implementing regulations and the Fifth Amendment's Due Process clause.

The Court first analyzes whether 8 U.S.C. § 1226(e) precludes its review of the Petition. The Court next outlines 8 U.S.C. § 1226(a) and then evaluates whether Respondents' purported custody determination has provided the requisite discretion and opportunity to be heard under §

[3] Petitioner **Rangel Mendoza** was already granted relief. *See* ECF No. 10.

1226(a). Finally, the Court analyzes whether Respondents' purported custody determination has provided due process under the *Mathews* test.[4]

**A. 8 U.S.C. § 1226(e)**

The Immigration and Nationality Act permits detention of aliens pending the outcome of removal proceedings under § 1226. Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under [§ 1226] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

In *Nielsen v. Preap*, 586 U.S. 392, 394 (2019), a plurality of the Supreme Court stated that § 1226(e) "applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases." In other words, § 1226(e) only bars review of decisions that are *both* (1) discretionary and (2) applications of § 1226 to particular cases. In *Miranda v. Garland*, 34 F.4th 338, 353 (4th Cir. 2022), the Fourth Circuit explicitly adopted this view, holding that it had jurisdiction over a decision that "may very well be" (1) discretionary but *was not* (2) the "application of § 1226 to [a] specific case[]." Under this view, this Court also has jurisdiction over any decision that was (2) an application of § 1226 to a specific case but *was not* (1) discretionary.

Here, Petitioners do not challenge a discretionary decision by Respondents. Rather, they challenge whether a decision by Respondents *was* discretionary in the first place. *See* ECF No. 22 at 2 ("Petitioners here do not argue that immigration officials made incorrect custody determinations reviewable by an [immigration judge]. Rather Petitioners assert that immigration officials failed to meaningfully exercise discretion[.]").

---

[4] As in prior cases, this Court does not address the validity or invalidity of the voluntary departure agreements allegedly signed by Petitioners. *See Nunez Aguilar v. Venturella*, No. 3:26-cv-611 (122 (S.D. W. Va. Oct. 8, 2026) (Chambers, J.); *Tinajero Rodriguez v. Mason*, No. 2:26-cv-122 (S.D. W. Va. Feb. 24, 2026) (Berger, J.). Even if the Court did find that these agreements were valid, Respondents acknowledge that Petitioners may "revoke" their voluntary departure agreements. *See* ECF No. 8 at 3.

Moreover, Petitioners challenge whether Respondents "provide[d] Petitioners with the minimum due process protections to which they were entitled," under both § 1226(a) and the Fifth Amendment. *Id.*; *see also* Pet. ¶¶ 28-40. Respondents' duty to comply with § 1226(a) and provide due process is not a matter of discretion but is subject to judicial review. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The aliens here, however, do not seek review of the [government's] exercise of discretion; rather, they challenge the extent of the [government's] authority under [8 U.S.C. § 1231(a)(6)]. And the extent of that authority is not a matter of discretion.").

This Court does not assert any jurisdiction over an immigration officer's exercise of discretion in deciding whether a detainee is a flight risk or danger to the community. That review is precluded by § 1226(e) and plainly delegated to immigration judges in the § 1226(a) framework outlined below. However, where Petitioners challenge whether an immigration officer is complying with the § 1226(a) framework itself, § 1226(e) does not bar this Court's review.

**B. 8 U.S.C. § 1226(a).**

"Separate provisions of § 1226 provide the government with authority to detain aliens." *Miranda*, 34 F.4th at 346. "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

"Even though the Attorney General may detain an alien during removal proceedings, the Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention." *Miranda*, 34 F.4th at 346. In other words, aliens have three *opportunities to be heard* under § 1226(a). During each opportunity, it is the alien's burden "to prove that he or she is not a danger to the community or a flight risk." *Id.* at 347 (citing 8 C.F.R. § 236.1(c)(8); 8

C.F.R. § 1236.1(c)(8); *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)). "The factors in determining risk may include any or all of the following:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States."

*Id.* at 362 n.10 (quoting *In re Guerra*, 24 I. & N. Dec. at 40). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." *Id.* at 362.

The first opportunity "occurs almost immediately upon an alien being detained" before an immigration officer. *Id.* at 362. "An immigration officer is authorized to release the alien if the officer is satisfied that the alien is not a danger to the community or a flight risk." *Id.* at 346 (citing § 236.1(c)(8)). The immigration officer's detention decision is explicitly discretionary. *See* §§ 236.1(c)(8), 1236.1(c)(8) (". . . in the officer's discretion . . .."). A Notice of Custody Determination (Form I-286) is intended to "memorialize[]" this initial detention decision. *Aroca v. Mason*, 819 F. Supp. 3d 517, 530 n.14 (S.D.W. Va. 2026) (Goodwin, J.).

The second opportunity "occurs soon thereafter" at a hearing before an immigration judge. *Miranda*, 34 F.4th at 362. "If an immigration officer denies bond . . . an alien may appeal the officer's bond determination to an immigration judge, giving the alien a second opportunity at release." *Id.* at 346 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). In other words, an alien may appeal the officer's *custody* determination—whether to release—to an immigration judge. *See* §§ 236.1(d), 1236.1(d)(1) (delegating authority to immigration judges to hear appeals from "initial custody determination[s]"); § 1003.19(a) ("Custody and bond determinations . . . may be reviewed by an Immigration Judge . . ..").

The third opportunity occurs, upon appeal, at a hearing before the Board of Immigration Appeals. *Miranda*, 34 F.4th at 347 (citing 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)).

Taken together, the above procedures "ensure that the government has a factual and legal basis for determining that a resident noncitizen's pre-removal detention is necessary[.]" *Nathanael Gebriel v. Todd Blanche*, No. 2:26-CV-02484-RFB-DJA, 2026 WL 3083762, at *5 (D. Nev. Oct. 15, 2026). Likewise, they "guarantee that the noncitizen has notice of said basis for their detention and an opportunity to be heard in rebuttal, as well as further review by a neutral decisionmaker." *Id.* As such, § 1226(a) provides "the fundamental features of due process—notice and an opportunity to be heard." *Miranda*, 34 F.4th at 362; *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (citation omitted).

**C. Opportunity to be heard.**

Immigration officers "must exercise discretion under § 1226(a) before making a detention determination." *Delgadillo v. Blanche*, No. CV 26-6195, 2026 WL 2569475, at *5 (E.D. Pa. Aug. 31, 2026). *See also* §§ 236.1(c)(8), 1236.1(c)(8) (". . . in the officer's discretion . . ..").

The Court finds that Respondents have denied Petitioner Escamilla a sufficient opportunity to be heard—a fundamental feature of due process—by failing to meaningfully exercise their discretion, in violation of § 1226(a) and the implementing regulations outlined above.

Section 1226(a) "necessarily contemplates an individualized exercise of judgment rather than a categorical policy of detention without regard to the noncitizen's particular circumstances." *A.J.P.S., v. Jason Benzel*, No. 1:26-CV-11858, 2026 WL 3131270, at *4 (D.N.J. Oct. 19, 2026). It does not authorize "automatic detention by policy" nor by a "categorical detention disposition." *Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026).

Noncitizens cannot be detained "as a matter of reflex." *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476 (S.D.N.Y. 2025).

Instead, due process "requires that such discretion *actually* be exercised— i.e., that some determination *actually* be made." *Tumba v. Francis*, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025) (emphasis added). In other words, a "valid" exercise of discretion "entails some sort of judgment." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494-95 (S.D.N.Y. 2025). Specifically, immigration officers must judge whether a detainee is a danger to the community or a flight risk, with the guidance of the *Guerra* factors available to them. *Miranda*, 34 F.4th at 362 n.10.

Prior to *Lopez Garcia v. Guadian*, 190 F.4th 305 (4th Cir. 2026), Respondents justified their mandatory detention of noncitizens under 8 U.S.C. § 1225(b)(2)(A). *See, e.g.*, *Rivera Santos v. Venturella*, No. 3:26-cv-00551 (S.D. W. Va. Sep. 4, 2026). Now that *Lopez Garcia* has rendered § 1225(b)(2)(A) inapplicable to noncitizens present in West Virginia, it appears that Respondents' detention of noncitizens under § 1226(a) continues to be mandatory in all but name. Indeed, the record in all three cases before this Court raises substantial doubt that *any* discretion is being exercised in the decision to detain *any* petitioners. *See Rangel Mendoza v. Venturella*, No. 3:26-cv-00662, ECF No. 8-1; *Naranjo Sigueros v. Venturella*, No. 3:26-cv-00663, ECF No. 10-1; and *Centeno Zapata v. Venturella*, No. 3:26-cv-00671, ECF No. 7-1.

The Form I-213s in all three cases lists the petitioners' "U.S. Address" as "555 GEO DR PHILIPSBURG, PENNSYLVANIA" which is the site of Moshannon Valley Processing Center where the petitioners were detained. *See Rangel Mendoza*, ECF No. 8-1 at 10; *Naranjo Sigueros*, ECF No. 10-1 at 2, 13; and *Centeno Zapata*, ECF No. 7-1 at 2, 10. There is no evidence of any inquiry into whether any petitioner has a fixed address. *See Miranda*, 34 F.4th at 362 n.10 (The first factor in determining risk is "whether the alien has a fixed address in the United States."). The

Form I-213s also all list the petitioners' "Type of Employment" as "Unemployed or Retired." *See Rangel Mendoza*, ECF No. 8-1 at 10; *Naranjo Sigueros*, ECF No. 10-1 at 2, 13; and *Centeno Zapata*, ECF No. 7-1 at 2, 10. There is no evidence of any inquiry into the employment history of any petitioner. *See Miranda*, 34 F.4th at 362 n.10 (The fourth factor in determining risk is "the alien's employment history.").[5]

Likewise, the Form I-831s in all three cases report that four of the six petitioners "entered the United States at an unknown place and time without being inspected or permitted by an immigration official." *See Rangel Mendoza*, ECF No. 8-1 at 12; *Naranjo Sigueros*, ECF No. 10-1 at 4; and *Centeno Zapata*, ECF No. 7-1 at 3, 11. There is no evidence of any other inquiry into the petitioners' length of residence nor their manner of entry. *See Miranda*, 34 F.4th at 362 n.10 (The second and ninth factors in determining risk are "the alien's length of residence in the United States" and "the alien's manner of entry to the United States.").[6]

Conversely, in all three cases, the Form I-831s do report whether petitioners have a criminal history. *See Miranda*, 34 F.4th at 362 n.10 (The sixth factor in determining risk is "the alien's criminal record . . ..)." However, five of the six petitioners do not have any criminal history to speak of. *See Rangel Mendoza*, ECF No. 8-1 at 3, 12; *Naranjo Sigueros*, ECF No. 10-1 at 4; and *Centeno Zapata*, ECF No. 7-1 at 4, 11-12. Similarly, there is no evidence of any other immigration-related *Guerra* risk factors. *See Miranda*, 34 F.4th at 362 n.10 (The seventh and eighth factors in

---

[5] A Form I-213 was not recorded for petitioner **Rangel Mendoza**. *See Rangel Mendoza*, ECF No. 8-1 at 2-3. He was already granted relief by this Court on October 19, 2026. *See Rangel Mendoza*, ECF No. 10.

[6] The Form I-831s for petitioners **Rangel Mendoza** and **Naranjos Sigueros** state that they entered the United States under H2A work visas in 2017 and in 2019 respectively. *See Rangel Mendoza*, ECF No. 8-1 at 3; *Naranjo Sigueros*, ECF No. 10-1 at 14-15. However, neither petitioner received a *Notice of Custody Determination*, Form I-286. *See Rangel Mendoza*, ECF No. 8 at 2; *Naranjo Sigueros*, ECF No. 10 at at 2-3.

determining risk are "the alien's history of immigration violations" and "any attempts by the alien to flee prosecution or otherwise escape from authorities.").[7]

It is not this Court's place to review an immigration officer's specific exercise of discretion. *See* § 1226(e); *Nielsen v. Preap*, 586 U.S. at 394. This Court may not scrutinize which *Guerra* factors that an immigration officer relies upon for their decision or whether they rely on any at all. However, a clear lack of inquiry into any of these factors, or any other factors that might suggest flight risk or danger to the community, reflects that Respondents are not meaningfully exercising their discretion, but continuing their practice of categorical detention.

The petitioners in all three cases "deny that they were ever informed that they had an opportunity to demonstrate their lack of flight risk or danger to the community." *Rangel Mendoza*, ECF No. 11 at 2; *Naranjo Sigueros*, ECF No. 13 at 2; *Centeno Zapata*, ECF No. 10 at 3. The record reflects that four of the petitioners were provided with *Notices of Custody Determination*, Form I-286s. *See Rangel Mendoza*, ECF No. 8-1 at 14; *Naranjo Sigueros*, ECF No. 10-1 at 8; *Centeno Zapata*, ECF No. 7-1 at 8, 16. However, "[n]otably absent from the form[s] is any mention of the factual bases for detention—*i.e.*, the reasons why the officer purportedly classified [the petitioners] as a flight risk and/or danger to the community." *Gebriel*, 2026 WL 3083762 at *8. Indeed, these forms do not even provide *which* classification the petitioners were given. Respondents have not answered whether the petitioners were classified as flight risks, dangers to the community, or both, much less the reasons *why*. Moreover, three of the petitioners did not check either box stating whether they "do" or "do not" request that an immigration judge review

[7] The Form I-831 for petitioner **Naranjos Sigueros** states that he was arrested for driving while impaired and without a license in 2021, but the case is still pending. *See Naranjo Sigueros*, ECF No. 10-1 at 15. Moreover, he did not receive a *Notice of Custody Determination*, Form I-286. *See Naranjo Sigueros*, ECF No. 10 at 2-3.

the purported custody determination, further suggesting a lack of understanding of any custody determination. *See Naranjo Sigueros*, ECF No. 10-1 at 8; *Centeno Zapata*, ECF No. 7-1 at 8, 16.[8]

Here, as in *A.J.P.S., v. Jason Benzel*, 2026 WL 3131270 (D.N.J. Oct. 19, 2026), Respondents "have failed to identify *any* evidence whatsoever demonstrating that [an immigration officer] actually considered [the petitioners'] individual circumstances before deciding to detain [them]. The mere existence of a custody determination form, without more, does not establish that [an immigration officer] meaningfully exercised [their] discretion." *Id.* at *6. While "the Form I-286 establishes that [an immigration officer] purportedly recorded a decision to detain [the petitioners], it does not establish that the decision resulted from an individualized assessment of [their] circumstances. And despite having the opportunity to supplement the record and explain the basis for that decision, Respondents have not done so." *Id.* at *5. Indeed, in all three cases, Respondents waived their opportunity for "factual testimony by an agent." *See Rangel Mendoza*, ECF No. 19 at 5; *Naranjo Sigueros*, ECF No. 21 at 5; and *Centeno Zapata*, ECF No. 20 at 5.

Thus, the Court finds that Respondents have failed to meaningfully exercise their discretion and have thus denied Petitioner Escamilla a sufficient opportunity to be heard under § 1226(a).

**D. Due Process.**

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

Courts evaluate procedural due process challenges under the balancing test within *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under this test, courts consider three distinct factors:

---

[8] Petitioner **Escamilla** checked the "do not" box. *See Rangel Mendoza*, ECF No. 8-1 at 14.

> First, *the private interest* that will be affected by the official action; second, *the risk of an erroneous deprivation* of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, *the Government's interest*, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (emphasis added).

In *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022), the Fourth Circuit found that the procedures adopted by § 1226(a) and its implementing regulations satisfy the *Mathews* test and thus "do not violate the Constitution's Due Process Clause." *Miranda*, 34 F.4th at 365.

Here, the Court finds that Respondents' *failure* to provide an individualized custody determination—consistent with § 1226(a) and the fundamental features of due process—fails the *Mathews* test and thus violates the Constitution's Due Process Clause.

**1. Private Interest.**

The first *Mathews* factor is the private interest affected by the process used. Here, it is Petitioner Escamilla's interest in freedom from detention, as affected by Respondents' alleged failure to provide an individualized custody determination consistent with § 1226(a). Freedom from detention is "a liberty interest which 'lies at the heart of the liberty that [the Due Process] Clause protects.'" *Miranda*, 34 F.4th at 359 (quoting *Zadvydas*, 533 U.S. at 690). This interest is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

However, this Court must also "recognize and incorporate into its analysis Supreme Court precedent establishing that aliens are due less process when facing removal hearings than an ordinary citizen would have." *Miranda*, 34 F.4th at 361. "The Supreme Court has stated over and over that in the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 359 (citation omitted); *but*

*see Demore v. Kim*, 538 U.S. 510, 511 (2003) n.9 ("[This statement] cannot be read to leave limitations on the liberty of aliens unreviewable.").

Yet, here, Petitioners do not challenge § 1226(a) nor any other rules made by Congress. Instead, Petitioners challenge Respondents' alleged failure to apply § 1226(a) as mandated by Congress, implemented by federal agencies, and upheld by the Fourth Circuit. Specifically, Petitioners allege that Respondents have failed to provide Petitioner Escamilla with an individualized custody determination: his first opportunity to be heard under § 1226(a).

The § 1226(a) framework reflects a careful balance between the competing considerations of Congress's broad power over immigration, agency discretion, noncitizen status, and freedom from detention, upheld by a detainee's three opportunities to be heard. Without any one of these opportunities, this careful balance is thrown off, and the detainee's liberty interest is compromised.

Indeed, here, where Petitioner Escamilla apparently did not request review—intentionally or not—the initial custody determination was his only opportunity to be heard. *See* ECF No. 8-1 at 14. Without it, his interest in freedom from detention is completely diminished.[9]

Hence, the Court finds that the private interest here weighs in favor of Petitioners.

**2. Risk of Erroneous Deprivation.**

The second *Mathews* factor is the risk of an erroneous deprivation of the private interest through the government's process and the probable value that a substitute process would reduce that risk. Here, it is the risk of an erroneous detention because of Respondents' alleged failure to provide an individualized custody determination consistent with § 1226(a) and the probable value that providing such determination would reduce that risk.

[9] The petitioners in the other cases did not check either box stating whether they "do" or "do not" request an immigration judge's review. *See Naranjo Sigueros*, ECF No. 10-1 at 8; *Centeno Zapata*, ECF No. 7-1 at 8, 16. The Court need not address the factual issue of whether the petitioners requested review to grant relief, but the Court finds their forms unclear. Their failure to check either box further suggests a lack of understanding.

The Fourth Circuit found that "aliens already receive the fundamental features of due process—notice and an opportunity to be heard" under § 1226(a), while analyzing that framework's risk of an erroneous deprivation of liberty. *Miranda*, 34 F.4th at 362. Specifically, the "[§ 1226(a)] procedures provide aliens detained by the government three separate opportunities to make their case concerning bond." *Id.* Without these fundamental features of due process, the risk of an erroneous deprivation of a detainee's liberty looms large.

As discussed *supra*, Respondents have denied Petitioner Escamilla a sufficient opportunity to be heard, by failing to meaningfully exercise their discretion. As such, Respondents have deprived Petitioner Escamilla of his first opportunity "to make his case." This deprivation carries a high risk of erroneous detention. Where a detainee's flight risk or danger to the community is not meaningfully considered during their first opportunity to be heard, there is a high risk that their immediate detention will be erroneous.

Indeed, where Petitioner Escamilla apparently did not request review—intentionally or not—this erroneous detention cannot be undone. Petitioner Escamilla had only one opportunity to "make his case" and even that opportunity was denied to him.

Hence, the Court finds that Respondents' failure to provide Petitioner a sufficient opportunity to be heard carries a substantial risk of an erroneous deprivation of liberty and that providing such an opportunity to be heard consistent with § 1226(a) would mitigate such a risk.

**3. Government's Interest.**

The third *Mathews* factor is the government's interest in using its current process and the burdens it would incur in using a substitute process. Here, it is Respondents' interest in its alleged failure to provide an individualized custody determination consistent with § 1226(a) and the burdens Respondents would incur in providing such an individualized determination.

This Court "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Miranda*, 34 F.4th at 364 (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). "Importantly, during the deportation process, that government interest includes detention." *Id.* However, the government's principal interest in immigration detention is "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

Here, the government's interest in control over matters of immigration is best served by following their own procedures as mandated by Congress under § 1226(a) and implemented by federal agencies under §§ 236.1(d)(1), 1003.19(a), and 1236.1(d)(1). *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Moreover, its interest in ensuring appearances at future immigration proceedings and preventing danger to the community is best served by *actually* assessing whether noncitizens are flight risks or dangers to the community.

Furthermore, providing an individualized custody determination under § 1226(a) and its implementing regulations "*reduce[s]* the fiscal and administrative burden of civil immigration detention by limiting detention to noncitizens who are actually dangerous or a flight risk." *Gebriel*, 2026 WL 3083762 at *9. Indeed, "[r]ecent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day." *Jacobo-Ramirez v. Mullin*, 834 F. Supp. 3d 1073, 1119 (D. Nev. 2026) (citation omitted). "Similarly, the public interest is served by the procedures under § 1226(a), as these limit the 'substantial societal costs' that 'unnecessary detention imposes' by 'separat[ing] families and remov[ing] from the community breadwinners,

caregivers, parents, siblings[,] and employees.'" *Gebriel*, 2026 WL 3083762 at *9 (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021)).

Hence, the Court finds that government's interests are best served by providing an individualized custody determination consistent with § 1226(a) and its administrative, financial, and societal burdens would be reduced in doing so.

Thus, the Court finds that Respondents' failure to provide an individualized custody determination—consistent with § 1226(a) and the fundamental features of due process—fails the *Mathews* test and violates the Constitution's Due Process Clause.

## IV. CONCLUSION.

The Court finds that Respondents have failed to provide Petitioner Escamilla with an individualized custody determination—and any opportunity to be heard—and have thus violated § 1226(a) and its implementing regulations. The Court also finds that this failure deprives Petitioner Escamilla of due process under the *Mathews* test and thus also violates the Fifth Amendment's Due Process Clause.

For the foregoing reasons, the Court **GRANTED** the Petition, ECF No. 1, and **DENIED** Respondents' Motion to Dismiss, ECF No. 8, as to Petitioner **Francisco Javier Escamilla**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented party.

ENTER: October 30, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE